UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ROBERTA R. CANO,                    )
                                    )
                Plaintiff,          )
                                    )
        v.                          )    No.  4:06CV1374 FRB
                                    )
HENRY M. PAULSON, JR., Secretary    )
of the United States Department     )
of the Treasury,                    )
                                    )
                Defendant.          )


**MEMORANDUM AND ORDER**

        Presently pending before the Court is defendant's Motion
for Summary Judgment (filed November 16, 2007/Docket No. 19).  All
matters are pending before the undersigned United States Magistrate
Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

        Plaintiff Roberta R. Cano brings this action pursuant to
Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e-5, et seq.,
alleging that her employer, the United States Department of the
Treasury, unlawfully discriminated against her in her employment on
account of her race by failing to promote her and by subjecting her
to harassment and retaliation for engaging in protected activity
which ultimately resulted in her constructive discharge.  Defendant
now moves for summary judgment claiming that there are no genuine
issues of material fact and that it is entitled to judgment as a
matter of law.  Plaintiff has responded to the motion, to which
defendant has replied.  Both parties have filed sur-replies to the

motion.

Pursuant to Rule 56(c), Federal Rules of Civil Procedure, a court may grant summary judgment if the information before the court shows that there are no material issues of fact in dispute and that the moving party is entitled to judgment as a matter of law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986). The burden of proof is on the moving party to set forth the basis of its motion, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986), and the court must view all facts and inferences in the light most favorable to the non-moving party, <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>, 475 U.S. 574, 587 (1986). Once the moving party shows there are no material issues of fact in dispute, the burden shifts to the adverse party to set forth facts showing there is a genuine issue for trial. <u>Id.</u> The non-moving party may not rest upon her pleadings, but must come forward with affidavits or other admissible evidence to rebut the motion. <u>Celotex</u>, 477 U.S. at 324.

Summary judgment is a harsh remedy and should not be granted unless the movant "has established [its] right to judgment with such clarity as to leave no room for controversy." <u>New England Mutual Life Ins. Co. v. Null</u>, 554 F.2d 896, 901 (8th Cir. 1977). The Eighth Circuit has noted, however, that "summary judgment can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material

fact." <u>City of Mt. Pleasant, Iowa v. Associated Elec. Coop., Inc.</u>, 838 F.2d 268, 273 (8th Cir. 1988).

## I. Evidence Before the Court on the Motion

At all times relevant to this cause, plaintiff Roberta R. Cano, a Caucasian, was employed as an Internal Revenue Agent of the Internal Revenue Service (IRS) in Chesterfield, Missouri. The instant lawsuit stems from the promotion of Joyce Addison, an African-American, to the temporary position of Acting Team Manager in August 2004. Plaintiff filed a formal EEO complaint with the Department of the Treasury on October 23, 2004, alleging that the failure to promote plaintiff to the position of Acting Team Manager constituted race discrimination and, further, that Ms. Addison had subjected her to harassment and a hostile work environment since receiving the promotion.

A. <u>Circumstances Underlying Promotion</u>

From September 2003 to September 2004, Antoine "Tony" Shabazz, an African-American, was Team Manager for Team 1265 and plaintiff's first-line supervisor within that team. During Mr. Shabazz's absences, members of Team 1265 were requested to serve as "Acting Team Manager." Upon Mr. Shabazz's request, Julie Amos, a Caucasian, acted for Mr. Shabazz on several occasions during his absences. In January 2004, Mr. Shabazz asked plaintiff to serve as Acting Team Manager in his absence, but plaintiff declined due to previous obligations. In March 2004, Mr. Shabazz asked the members

- 3 -

of his team if they were interested in becoming managers or acting as temporary managers.  Only Ms. Amos expressed an interest in management.  Plaintiff responded that she no longer had permanent management aspirations.  On August 5, 2004, Mr. Shabazz asked plaintiff if she would be interested in serving as Acting Team Manager during his absence the following week.  Plaintiff declined and suggested that he contact Ms. Amos.  Upon reconsidering the offer, plaintiff contacted Mr. Shabazz and expressed her interest in the position.  Mr. Shabazz, however, informed plaintiff that he had already contacted Ms. Amos and she had accepted the offer.

Mr. Shabazz accepted a position with the IRS in Indianapolis, Indiana, and was scheduled to begin in that position in September 2004.  On or about August 9, 2004, Mr. Shabazz asked plaintiff and Ms. Amos if they were interested in serving as Acting Team Manager after his departure and until a new permanent Team Manager was selected.  Both expressed interest and were initially recommended for the position.

Mr. Randall, an African-American, was Team Manager of Team 1261 and was assigned to be Mr. Shabazz's mentor and management coach upon Mr. Shabazz's promotion to Team Manager in September 2003.  Mr. Shabazz periodically consulted with Mr. Randall regarding management decisions and issues within his team. When Mr. Shabazz consulted with Mr. Randall about his upcoming departure and the need to recommend someone to serve as Acting Team

Manager, Mr. Randall informed Mr. Shabazz that Ms. Addison, a member of Team 1261, was interested in management and he suggested that Mr. Shabazz recommend Ms. Addison for the position.

In addition to plaintiff and Ms. Amos, Mr. Shabazz recommended Ms. Addison for the temporary position of Acting Team Manager for Team 1265.

Lori Nichols, a Caucasian, was Territory Manager for the IRS and supervised Mr. Shabazz. Due to the extended duration of the temporary position to be filled upon Mr. Shabazz's departure, Ms. Nichols requested that Mr. Shabazz recommend someone to her to become Acting Team Manager. Upon recommending possible candidates to fill the position, including Ms. Amos and the plaintiff here, Mr. Shabazz ultimately recommended that Ms. Addison be the candidate selected to serve as Acting Team Manager. Mr. Shabazz determined it would be best for the new acting manager to come from outside the existing team and that such arrangement would better establish the managerial lines of authority within the team. Mr. Shabazz's concern in this regard arose from a previous incident whereby team members attempted to take advantage of another team member who was serving as Acting Team Manager. Ms. Nichols agreed with Mr. Shabazz's reasoning and selected Ms. Addison to be Acting Team Manager for Team 1265. Neither Mr. Shabazz nor Ms. Nichols considered race in the recommendation or selection of Ms. Addison to serve as Acting Team Manager for Team 1265.

Ms. Addison held a college degree, a master's degree and was a Certified Public Accountant (CPA). Ms. Addison had also worked coordinated industry cases (CIC) and served as Team Coordinator for Team 1261. Plaintiff did not have a college degree, was not a CPA and was assigned her first CIC case in late-August 2004. Plaintiff had never been a Team Coordinator. Although plaintiff had not served for Mr. Shabazz as Acting Team Manager, she had acted for other managers in the past.

Beginning August 22, 2004, Ms. Nichols no longer served as Territory Manager due to her participation in the IRS's Executive Development Program. From August 23 to October 16, 2004, Lou Greer served as Acting Territory Manager. On October 17, 2004, Gregory Zielinski assumed the position as permanent Territory Manager.

On August 23, 2004, Mr. Shabazz informed his team through e-mail of Ms. Addison's selection as Acting Team Manager, Ms. Nichols' selection to participate in the Executive Development Program, and of Mr. Greer's selection to serve as Acting Territory Manager. Ms. Addison served as Acting Team Manager through late-October 2004. In late-October, Ms. Addison became the permanent Team Manager for Team 1265 and continued in that position until plaintiff retired in January 2006.

B.  Conduct of Ms. Addison as Team Manager

On August 31, 2004, Mr. Shabazz assigned plaintiff to

work the coordinated industry case (CIC) examination of taxpayer A.G. Edwards, Inc. This was plaintiff's first CIC examination. Coordinated industry cases are more complex and require more time and resources to complete than a standard industry case. Both plaintiff and Ms. Addison considered working a CIC examination to be helpful to plaintiff's career because it positioned her for advancement within the IRS. Rich Elbert was assigned to be Team Coordinator for this examination. Plaintiff remained assigned to this CIC case until her retirement in January 2006.

In September 2004, Ms. Addison reassigned a case from Ms. Amos to plaintiff. Ms. Amos, a member of Team 1265, was anticipated to take extended annual leave in relation to an upcoming adoption. The reassigned case was designated "priority work" and plaintiff understood that she could be removed from other assignments, including the CIC, in order to complete the reassigned case. Plaintiff performed no work on this reassigned case, however, inasmuch as Ms. Amos returned from leave sooner than expected and reassumed the case. Since plaintiff did not have to work the case, the reassignment did not affect plaintiff's workload and did not affect her assignment to the CIC examination.

On or about September 29, 2004, plaintiff submitted a financial interest disclosure form to Ms. Addison related to an individual retirement account (IRA) plaintiff owned that was managed by A.G. Edwards, Inc., the taxpayer that was the subject of

the CIC case to which plaintiff was assigned. Plaintiff disclosed the IRA's value to be between $10,000.00 and $12,000.00. IRS policy relating to financial conflicts of interest states that an employee may continue to participate in a case involving a taxpayer if the value of the employee's and his or her spouse's financial interest in the publicly traded securities of the taxpayer does not exceed $15,000.00. The investment threshold for sector mutual funds is $50,000.00. Plaintiff's IRA involved technology-sector investments. Inasmuch as a spouse's investments were imputed to the employee and plaintiff's form showed an amount nearing the conflict of interest threshold, Ms. Addison called plaintiff in October 2004 to inquire whether Roy Cano had any investments with that taxpayer. Ms. Addison was unaware that plaintiff and Roy Cano were divorced. In response to this inquiry, plaintiff clarified the nature of the account and set out her reasons to support her contention that such account did not constitute a financial interest in the client. Ms. Addison thereafter determined plaintiff's financial interest to be exempt and not to constitute a conflict of interest. Ms. Addison signed the disclosure form which allowed plaintiff to continue working on the CIC examination.

Plaintiff sought reimbursement for her September and October 2004 travel in relation to the CIC case. Plaintiff's travel vouchers were not approved because she had classified her travel status as non-taxable. Ms. Addison had determined the

status to be "long-term taxable travel" because the case assignment required plaintiff to work at an alternate work site for a period reasonably expected to exceed one year.[1]  The travel reimbursement status of both plaintiff and Rich Elbert, the other revenue agent from Team 1265 assigned to the case, was classified by Ms. Addison as long-term taxable travel.  On November 10, 2004, Ms. Addison officially determined that the A.G. Edwards case would have a duration in excess of one year.  On that same date, Territory Manager Zielinski held a meeting at which Ms. Addison, plaintiff and a union representative were present.  Mr. Zielinski supported Ms. Addison's classification of plaintiff's travel reimbursement status but offered a compromise, which was accepted by plaintiff. It was agreed that plaintiff's travel vouchers for September and October 2004 would be approved as non-taxable travel and that plaintiff's future travel vouchers for her work on the A.G. Edwards CIC case would be classified as long-term taxable travel.  All of plaintiff's travel vouchers were approved as agreed.

In December 2004, Mr. Elbert went on annual leave.  It was standard procedure for each examination team in Team 1265 to close the audit cycle of their cases and submit them to Ms. Addison

---

[1]When an IRS employee's travel reimbursement status is "long-term taxable travel," taxes are withheld from that employee's travel reimbursement payments but the employee is reimbursed by the IRS for their federal, state and local income taxes withheld. Plaintiff argues that this classification nevertheless serves to her disadvantage inasmuch as withheld Medicaid taxes are not reimbursed.

for her review. Plaintiff therefore had the responsibility to close out the prior audit cycle of the A.G. Edwards CIC case during Mr. Elbert's absence. Because plaintiff was working her first CIC case and was unaware of any written procedures to follow, she requested assistance in closing. Without receiving assistance from Ms. Addison, plaintiff proceeded to close the cycle using industry case procedures and submitted the case on December 9, 2004, for closing. Ms. Addison thereafter informed plaintiff of additional items needed to properly complete the closure. Plaintiff completed the closing on December 14, 2004. Plaintiff was required to perform certain clerical duties, such as making copies, to complete the closing.

In March 2005, plaintiff telephoned Ms. Addison and requested that she be transferred from the CIC case. Plaintiff gave no reason for her request. Ms. Addison thereafter contacted Mr. Elbert and inquired as to whether he knew of any reason why plaintiff would request to be removed. Mr. Elbert responded that he could report nothing negative in relation to plaintiff's performance on the case. At a meeting the following morning, plaintiff informed Ms. Addison that she did not want to continue working with Mr. Elbert. Ms. Addison advised plaintiff that she could not be transferred at that time because she was leaving for two weeks and there was no other case to which plaintiff could be transferred. Plaintiff does not know whether or not there was

other work available but believed that a quick check of the computer system would have determined whether such work was available. Ms. Addison did not make such a check. Plaintiff thus continued to work with Mr. Elbert until Ms. Addison returned. Subsequent to Ms. Addison's return, plaintiff and Mr. Elbert continued to work on the case together. There is no evidence that plaintiff made any further complaint to Ms. Addison regarding Mr. Elbert or that, upon Ms. Addison's return, she continued in her request to be reassigned to another case.

During a telephone conversation with plaintiff regarding her work on the CIC case, Ms. Addison asked plaintiff to communicate via telephone when she had a significant or complicated issue, concern or question. Plaintiff preferred e-mail communication for documentation purposes. Ms. Addison did not tell plaintiff that she should not e-mail her, and, after this time, she continued to respond to e-mails that plaintiff sent to her, as well as to other communications.

When the audit plan for the next audit cycle of the A.G. Edwards CIC case was submitted to Ms. Addison by Mr. Elbert and plaintiff, Ms. Addison reviewed it and requested numerous changes. This required Mr. Elbert and plaintiff to perform additional work to incorporate these changes and improve the plan that they had submitted. Mr. Elbert assigned to plaintiff the responsibility of generating the audit plan and implementing the changes Ms. Addison

requested. Plaintiff was aware of the date by which the audit plan was to be submitted to Ms. Addison for her approval, and Ms. Addison did not request that it be completed before that date.

Plaintiff determined to retire effective January 3, 2006. Plaintiff had eight hours of "use or lose" annual leave and therefore determined to take annual leave on her last work day, January 3, 2006. Plaintiff's last scheduled day to come into work, therefore, was December 30, 2005. On December 30, 2005, plaintiff contacted Ms. Addison by telephone and said she would be a few hours late coming into the office for her pre-retirement check-out. Ms. Addison informed plaintiff that she was leaving early that day and could not wait for plaintiff to come in inasmuch as she was leaving town. Plaintiff was not aware until that time that Ms. Addison was leaving early that day. Ms. Addison asked plaintiff to come in the next business day, the effective date of her retirement, because no one else would be available to perform the check out procedures on December 30, 2005. Plaintiff was checked out the following business day, January 3, 2006. Because of coming in to work on January 3, 2006, plaintiff "lost" four hours of annual leave.

C.   Protected Activity and EEO Complaint Process

Upon learning in August 2004 that Ms. Addison had been selected to serve as Acting Team Manager, plaintiff inquired of Mr. Shabazz and Ms. Nichols as to the circumstances underlying the

selection.  Thereafter, on October 23, 2004, plaintiff filed a formal EEO complaint with the Department of the Treasury alleging racial discrimination in the Department's failure to promote plaintiff to the position.  In the EEO complaint, plaintiff also described various "problems" she was having with Ms. Addison, including the issue with Ms. Amos's reassigned case, the issue relating to travel reimbursement, and the issue relating to the IRA account.  Plaintiff also complained that she did not receive a same-day response from Ms. Addison on a request for annual leave. Plaintiff complained that she developed stress, anxiety, depression, and chest pains due to these problems.

On December 3, 2004, the EEO informed plaintiff that it was dismissing those portions of her EEO complaint which alleged that Ms. Addison subjected plaintiff to harassment and a hostile work environment.  The EEO determined that such allegations failed to state an actionable claim.  On that same date and by separate notice, the EEO informed plaintiff that it would investigate plaintiff's EEO claim of race discrimination in the failure to promote plaintiff to the temporary position of Acting Team Manager. No other claims were identified in this notice.  Plaintiff was also informed that if no response was received to the notice, the EEO would assume that plaintiff agreed with the claim(s) as stated.

In a letter to the Department of the Treasury dated December 15, 2004, plaintiff disagreed with the EEO's dismissal of

her harassment/hostile work environment claim. In response, the EEO informed plaintiff of its continued denial of the claim for failure to state a claim. Thereafter, the EEO investigated only plaintiff's claim of race discrimination in relation to the Department of the Treasury's failure to temporarily promote plaintiff to the position of Acting Team Manager.

Throughout the EEO appeal process, plaintiff challenged the dismissal of her claim of retaliatory harassment/hostile work environment as well as continued to pursue her claim of race discrimination. On September 27, 2005, an Administrative Law Judge (ALJ) affirmed the determination of the EEO that plaintiff was not discriminated against on account of her race in relation to the temporary promotion. The ALJ also concurred with the EEO's dismissal of plaintiff's claim of harassment/hostile work environment. A Final Order on the ALJ's decision was entered October 5, 2005. Plaintiff appealed this Final Order to the Equal Employment Opportunity Commission (EEOC) and, in her brief on appeal, alluded that she had determined to retire in January 2006 due to the continued stress in relation to the EEO complaint and the subsequent retaliation. On April 6, 2006, the EEOC affirmed the agency's Final Order, finding the record not to establish that discrimination occurred. The EEOC further stated that plaintiff did not address on appeal the dismissal of her claim of harassment/ hostile work environment. The EEOC did not address plaintiff's

reference to her determination to retire.  On June 13, 2006, the EEOC denied plaintiff's request to reconsider its decision.

Plaintiff has filed and pursued no other EEO complaints.

## II.  Discussion

Because a review of the record shows plaintiff to have made allegations of harassment and retaliatory conduct in her EEO complaint and throughout the administrative appellate process, the undersigned determines such claims to be sufficiently exhausted for purposes of summary judgment review.  Cf. Watson v. O'Neill, 365 F.3d 609, 612-14 (8th Cir. 2004) (failure to exhaust administrative remedies on claim of retaliation where in EEO complaint, plaintiff did not allege or mention *any* type of discriminatory conduct indicating retaliation or reprisal).  For purposes of this summary judgment motion, the undersigned also assumes *arguendo* that plaintiff's claim of constructive discharge is sufficiently like or reasonably related to plaintiff's exhausted claim of retaliation, such that the Court may address such claim here.  E.E.O.C. v. Delight Wholesale Co., 973 F.2d 664, 669 (8th Cir. 1992).

A.    Race Discrimination

Plaintiff claims that the defendant's promotion of Joyce Addison instead of herself to the temporary position of Acting Team Manager in August 2004 constituted unlawful race discrimination. Defendant argues that it is entitled to summary judgment on this claim inasmuch as plaintiff cannot establish a *prima facie* case of

reverse race discrimination. For the following reasons, the defendant's argument is well taken.

Title VII prohibits discrimination in federal employment on the basis of the employee's race. 42 U.S.C. § 2000e-16. An employee such as the plaintiff here who lacks direct evidence of unlawful discrimination may nevertheless establish such a claim through indirect evidence and the familiar burden-shifting analysis of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>See</u> <u>Hammer v. Ashcroft</u>, 383 F.3d 722, 724 (8th Cir. 2004). Therefore, in order to survive defendant's Motion for Summary Judgment, plaintiff must establish a *prima facie* case of discrimination. <u>Id.</u> If she is able to do so, the burden then shifts to defendant to produce evidence that the adverse action occurred for a legitimate, nondiscriminatory reason. <u>Id.</u> If defendant comes forward with such evidence, plaintiff must then show that the defendant's proffered explanation is pretext for discrimination. <u>Id.</u> At all times, plaintiff bears the ultimate burden of proving that she was unlawfully discriminated against. <u>Forrest v. Kraft Foods, Inc.</u>, 285 F.3d 688, 691 (8th Cir. 2002).

To establish a *prima facie* case on a claim of reverse race discrimination, plaintiff bears the burden of demonstrating: 1) that she is white; 2) that she applied for and was qualified for an open position; 3) that the employer hired someone of a minority race; and 4) that background circumstances support the suspicion

that the defendant is that unusual employer who discriminates against the majority. Hammer, 383 F.3d at 724. Defendant concedes that plaintiff has met the first three elements of a *prima facie* case. Defendant argues, however, that plaintiff has failed to establish that the defendant is that unusual employer who discriminates against the majority.

Plaintiff has presented the Court with no evidence of background circumstances to support the suspicion that the defendant discriminated against the majority. The undisputed evidence before the Court shows that Ms. Addison was substantially more qualified for the position than plaintiff and indeed possessed a superior educational background and an active interest in attaining a management position. The undisputed evidence also shows that plaintiff and another Caucasian colleague were initially solicited and recommended for the position, but that the determination was made to promote someone outside of the team in order to better establish the managerial lines of authority. This concern regarding the lines of authority came in response to a previous incident whereby team members attempted to take advantage of another team member who was serving as Acting Team Manager. In addition, plaintiff herself had previously indicated to the Team Manager that she had no interest in pursuing management opportunities and indeed, one week prior to being considered for this promotion, rejected an offer to serve as Acting Team Manager

for a limited period of time.  Cf. <u>Duffy v. Wolle</u>, 123 F.3d 1026, (8th Cir. 1997) (plaintiff met this element of *prima facie* case by establishing that person hired was substantially less qualified than plaintiff; that an interest in hiring members of a minority class had been expressed by the administration; and that some members of the hiring panel usually hired members of the minority class).

In light of this strong objective evidence to support the defendant's determination to temporarily promote Ms. Addison to the position of Acting Team Manager of Team 1265, the fact that Mr. Shabazz, who made the final recommendation to promote Ms. Addison, and Mr. Randall, who recommended Ms. Addison to Mr. Shabazz, were both African-American, is insufficient alone to establish that the defendant is that unusual employer who discriminates against the majority.  This is especially true here where it has been shown that members of plaintiff's race had previously served as Acting Team Manager at the request of Mr. Shabazz and that, indeed, plaintiff herself had been asked by Mr. Shabazz in the past to so serve.

Because plaintiff cannot establish a *prima case* of reverse race discrimination in the defendant's failure to promote her in August 2004 to the temporary position of Acting Team Manager, defendant is entitled to summary judgment on plaintiff's claim.

B.    <u>Retaliation</u>

Plaintiff claims that Ms. Addison's employment actions taken against her were in retaliation for engaging in protected activity, that is, for questioning Ms. Addison's promotion to the temporary position of Acting Team Manager and for subsequently pursuing agency action regarding race discrimination and harassment.

Title VII prohibits employers from retaliating against employees for opposing any discrimination made unlawful by Title VII, or for making a charge or participating in any manner in an investigation or proceeding under Title VII.  42 U.S.C. § 2000e-3(a); <u>Bogren v. Minnesota</u>, 236 F.3d 399, 407-08 (8th Cir. 2000); <u>Brower v. Runyon</u>, 178 F.3d 1002, 1005 (8th Cir. 1999).  For claims of retaliation where direct evidence is unavailable, the <u>McDonnell-Douglas</u> burden-shifting analysis applies.  <u>Twymon v. Wells Fargo & Co.</u>, 462 F.3d 925, 936 (8th Cir. 2006).  As such, plaintiff bears the burden of establishing a *prima facie* case of retaliation. <u>Higgins v. Gonzales</u>, 481 F.3d 578, 589 (8th Cir. 2007).  To establish a *prima facie* case that she was retaliated against for complaining of discriminatory conduct, plaintiff must show that: 1) she engaged in activity protected by Title VII; 2) a reasonable employee would have found the challenged retaliatory action materially adverse; and 3) a causal connection exists between her protected activity and the adverse employment action.  <u>Id.</u>  If

- 19 -

plaintiff establishes her *prima facie* case of retaliation, the burden shifts to the defendant-employer to produce some legitimate, non-discriminatory reason for the adverse action. <u>Buettner v. Arch Coal Sales Co., Inc.</u>, 216 F.3d 707, 714 (8th Cir. 2000). If the employer satisfies this burden, the plaintiff then must demonstrate that the proffered reason is pretext for retaliation. <u>Id.</u> The ultimate burden rests with the plaintiff to establish that her employer's adverse action was in retaliation for plaintiff's protected conduct. <u>Id.</u>

The evidence before the Court shows plaintiff to have engaged in protected activity. However, the evidence fails to establish that a reasonable employee would find the defendant's alleged retaliatory actions to be materially adverse. In <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53 (2006), the Supreme Court recognized that the anti-retaliation provision of Title VII "is not limited to discriminatory actions that affect the terms and conditions of employment" because "[a]n employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him harm outside the workplace." <u>Id.</u> at 63-64. The Court held that "a plaintiff [alleging retaliation] must show that a reasonable employee would have found the challenged action materially adverse[.]" <u>Id.</u> at 68. The adversity must be *material* so as to separate significant from trivial harms. <u>Burlington N.</u>, 548 U.S. at 68. Petty slights,

minor annoyances, personality conflicts, and snubbing by supervisors do not create such significant harms. Id.; see also Higgins, 481 F.3d at 589-90. Instead, the anti-retaliation provision of Title VII seeks to prevent employer interference with unfettered access to the Title VII remedial mechanisms by "prohibiting employer actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers." Burlington N., 548 U.S. at 68 (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 346 (1997)). In deciding whether an action would be adverse to a "reasonable employee," this Court must consider the specific context of the action. Id. at 69.

In this cause, plaintiff claims that Ms. Addison's conduct as set out above, and specifically, the reassignment of Ms. Amos's case in September 2004, the initial disapproval of travel reimbursement, the October 2004 inquiry regarding plaintiff's IRA, the failure to initially assist plaintiff in closing out the prior audit cycle in December 2004, the failure to reassign plaintiff from the CIC case in March 2005, the request for plaintiff to communicate with her via telephone, the last-hour request to make changes to the CIC's final audit, and the failure to make arrangements for plaintiff to check out on December 30, 2005, was in retaliation for plaintiff's earlier inquiries regarding Ms. Addison's promotion and for filing an EEO complaint of discrimination. Plaintiff's allegations, however, point to nothing

more than petty annoyances, minor inconveniences and supervisor "snubbing."

The undisputed evidence shows that despite being requested to assume responsibility for Ms. Amos's case in September 2004, plaintiff in fact performed no work on the case inasmuch as Ms. Amos did not take annual leave as expected. As such, plaintiff's assignment to and performance on the CIC case, which both plaintiff and Ms. Addison considered to be desirable and professionally beneficial to plaintiff, were not affected by this proposed reassignment. Nor did Ms. Addison's query to plaintiff regarding her IRA affect plaintiff's CIC assignment inasmuch as, through her questions to plaintiff and plaintiff's subsequent clarification, Ms. Addison was able to find no conflict of interest in plaintiff's assignment and was therefore able to approve plaintiff's continued participation on the case. Likewise, Ms. Addison's failure in December 2004 to initially assist plaintiff in closing prior audits and her last-hour requests for changes to the CIC final report did not affect plaintiff's performance on the CIC case. Although plaintiff was inconvenienced by Ms. Addison's actions and experienced pressure to timely complete the projects, nothing before the Court shows plaintiff not to have been able to timely perform what was requested and in a satisfactory manner. Additional stress experienced as a result of increased demands does not constitute adverse action sufficient to trigger the protections

of Title VII.  See Harlston v. McDonnell Douglas Corp., 37 F.3d 379, 382 (8th Cir. 1994).

With respect to plaintiff's request for travel reimbursement, the undisputed evidence before the Court shows plaintiff and Ms. Addison to have merely had differing views as to the proper classification of plaintiff's travel.  Upon meeting with the Territory Manager, it was determined that Ms. Addison's interpretation of the travel classification was correct but that plaintiff would be granted travel reimbursement as she requested for the first two months of the travel period.  With respect to the failure of Ms. Addison to reassign plaintiff from the CIC case in March 2005 upon plaintiff's request, plaintiff admits that her request for reassignment was on account of a personality conflict with her Team Coordinator on the project.  Other than plaintiff's unsupported assertion that Ms. Addison could have found another case if she had looked, plaintiff has presented no evidence to rebut the defendant's showing that at the time of plaintiff's request, Ms. Addison had no other case to assign to plaintiff and that Ms. Addison could not accede to plaintiff's request for two weeks inasmuch as Ms. Addison would be out of town.  To withstand summary judgment, plaintiff must substantiate her allegations with "'sufficient probative evidence [that] would permit a finding in [her] favor on more than mere speculation, conjecture, or fantasy.'"  Moody v. St. Charles County, 23 F.3d 1410, 1412 (8th

Cir. 1994) (quoting <u>Gregory v. Rogers</u>, 974 F.2d 1006, 1010 (8th Cir. 1992)). Nevertheless, plaintiff has presented nothing to the Court to demonstrate that as a result of Ms. Addison's failure to reassign plaintiff, she suffered a significant harm. Indeed, as discussed above, the evidence shows that plaintiff was able to continue to work with her Team Coordinator and to have timely and satisfactorily completed the CIC project.

Finally, the request for plaintiff to communicate by telephone and to come in on her last day of work to undergo pre-retirement check out procedures amount to nothing more than mere inconveniences to plaintiff.

The record reflects that plaintiff had a personality conflict with Ms. Addison and disagreed with Ms. Addison's management style and level of oversight. Plaintiff has not alleged, however, nor does the record demonstrate that such personality conflict and professional disagreement created a situation so unbearable or bleak such that a reasonable employee would have been dissuaded from complaining about discrimination in such an environment.[2] Indeed, throughout the entire period during which Ms. Addison served as plaintiff's Team Manager, acting or otherwise, plaintiff remained assigned to a desirable position and was able to timely and satisfactorily complete the projects which

_____

[2]To the contrary, as set out above, the record shows plaintiff to have continued during this time to actively pursue her claim of discrimination, including aggressive appeals of the EEO's adverse findings.

were assigned to her in that position. Because personality conflicts, minor inconveniences and snubs do not constitute significant harm in the circumstances of this case, it cannot be said that Ms. Addison's actions materially and adversely affected plaintiff such that a reasonable employee in her shoes would be dissuaded from complaining. See Higgins, 481 F.3d at 591.

Accordingly, because plaintiff has failed to establish a *prima facie* case, defendant is entitled to summary judgment on plaintiff's claim of retaliatory harassment.

C.  Constructive Discharge

Finally, plaintiff claims that she determined to retire two years earlier than planned due to the stresses experienced in her employment caused by her employer's retaliation. Circumstances amounting to a constructive discharge are considered to be adverse employment actions. Kerns v. Capital Graphics, Inc., 178 F.3d 1011, 1016 (8th Cir. 1999). A constructive discharge occurs when an employer deliberately renders the employee's working conditions so intolerable that the employee has no option but to quit. Devin v. Schwan's Home Serv., Inc., 491 F.3d 778, 789 (8th Cir. 2007); Breeding v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1159 (8th Cir. 1999). "[T]he employer must deliberately create intolerable working conditions with the intention of forcing the employee to quit and the employee must quit." Breeding, 164 F.3d at 1159 (internal quotation marks and citation omitted). "The conduct

complained of must have been severe or pervasive enough to create an objectively hostile or abusive work environment, and additionally the plaintiff must subjectively perceive the environment to be abusive." Devin, 491 F.3d at 789 (internal quotation marks and citation omitted). "A constructive discharge arises only when a reasonable person would find her working conditions intolerable. 'An employee who quits without giving her employer a reasonable chance to work out a problem is not constructively discharged.'" Vajdl v. Mesabi Academy of KidsPeace, Inc., 484 F.3d 546, 553 (8th Cir. 2007) (quoting West v. Marion Merrell Dow, Inc., 54 F.3d 493, 497 (8th Cir. 1995)).

As discussed supra at Section II.B, the alleged hostile conduct which plaintiff claims she was subjected to was neither severe nor pervasive enough to support her claim of constructive discharge. Plaintiff complained of isolated professional disagreements and personality conflicts which occurred in September, October and December 2004. After the March 2005 incident wherein plaintiff was not reassigned from the CIC case and thereafter satisfactorily completed the project, plaintiff alleges no hostile conduct prior to December 30, 2005, the last business day before her effective retirement date. See Devin, 491 F.3d at 790 (plaintiff not constructively discharged where alleged hostile conduct was sporadic); Elnashar v. Speedway SuperAmerica, L.L.C., 484 F.3d 1046, 1058 (8th Cir. 2007) (plaintiff not constructively

discharged where the record showed only that he felt unfairly criticized and his encounters with his supervisor were unpleasant); Jones v. Fitzgerald, 285 F.3d 705, 716 (8th Cir. 2002) ("Constructive discharge requires considerably more proof than an unpleasant and unprofessional environment."); Breeding, 164 F.3d at 1160 (feeling of being unfairly criticized, or difficult or unpleasant working conditions not so intolerable as to compel a reasonable person to resign).

Nor has plaintiff demonstrated that she took affirmative steps short of early retirement that a reasonable employee would have taken to make her conditions of employment more tolerable. Jones, 285 F.3d at 716. Indeed, the evidence before the Court shows that in November 2004, plaintiff met with the Territory Manager in an effort to resolve her dispute with Ms. Addison regarding travel reimbursement and that the resolution of such circumstance was partially beneficial to plaintiff. There is no evidence before the Court showing that plaintiff made any other effort with either Ms. Addison or any of her superiors to resolve any other perceived conflict plaintiff had with Ms. Addison. Nor is there any evidence before the Court demonstrating that any such effort would have been futile. See id.

Inasmuch as the undisputed evidence before the Court shows that the conditions of plaintiff's employment were not so intolerable that a reasonable person would be forced to retire

early or that defendant acted with the requisite intention of forcing plaintiff into early retirement, defendant should be granted summary judgment as to plaintiff's claim of constructive discharge.

Therefore, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that defendant's Motion for Summary Judgment (Docket No. 19) is granted.

**IT IS FURTHER ORDERED** that defendant's Motion to Strike (Docket No. 32) is denied.

Judgment shall be entered accordingly.

_Frederick R. Buckles_
UNITED STATES MAGISTRATE JUDGE

Dated this _23rd_ day of September, 2008.